```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS


STACY WARZEKA,

                    Plaintiff,

vs.                                  Case No. 15-1118-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On December 20, 2013, administrative law judge (ALJ) Susan Conyers issued her decision (R. at 11-23). Plaintiff alleges that she had been disabled since November 1, 2009 (R. at 11). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since November 1, 2009 (R. at 13).

4

At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 13).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 16).  After determining plaintiff's RFC (R. at 17-18), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 21).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 21-22).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22).

**III.  Did the ALJ err in her consideration of the opinions of Dr. Maxfield and Dr. Holmes when making her RFC findings?**

In her decision, the ALJ found that plaintiff had the RFC to perform simple and routine tasks involving no interaction with the general public and no more than occasional interaction with coworkers and supervisors (R. at 17-18).  In making these RFC findings, the ALJ considered the opinions of Dr. Maxfield, a non-examining state agency psychological consultant, and Dr. Holmes, plaintiff's treating physician.

Dr. Maxfield prepared a mental residual functional capacity assessment on plaintiff.  He found plaintiff moderately limited in: (1) her ability to understand and remember detailed instructions, (2) her ability to carry out detailed instructions, (3) her ability to maintain attention and

5

concentration for extended periods, and (4) her ability to interact appropriately with the general public.  In his narrative discussion, Dr. Maxfield indicated that plaintiff is able to remember simple and perhaps intermediate instructions. Dr. Maxfield further noted that plaintiff has episodes of anxiety which would impact her ability for sustained concentration, but that severe anxiety is under fairly good control and would not interfere with her ability to sustain employment.  Finally, Dr. Maxfield stated that plaintiff has anxiety in large groups, and that interaction with the public should be limited (R. at 110-112).  The ALJ accorded "substantial weight" to his opinions (R. at 21).[1]

Dr. Holmes prepared a medical source statement-mental, in which he opined that plaintiff had moderate limitations in 10 categories, including the ability to maintain attention and concentration for extended periods (R. at 448-449).  The ALJ noted that Dr. Holmes had provided plaintiff with Xanax to treat anxiety symptoms, and that plaintiff was receiving care for other mental issues from Prairie View, who noted that the

---

[1] Dr. Maxfield also prepared a psychiatric review technique form, rating plaintiff's limitations in 4 broad categories (R. at 108-109).  The psychiatric review technique findings described in 20 C.F.R. § 404.1520a are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories set out in 20 C.F.R. § 404.1520a.  SSR 96-8p, 1996 WL 374184 at *4.  It is the more detailed assessment prepared by Dr. Maxfield for purposes of an RFC assessment which is relevant to the determination of whether the ALJ's RFC findings are supported by substantial evidence.

6

conditions were under "fairly good control." The ALJ gave the opinions of Dr. Holmes "some weight" (R. at 20).

The ALJ limited plaintiff to simple and routine tasks (R. at 17-18). This limitation is consistent with the opinions of Dr. Maxfield and Dr. Holmes; they both found plaintiff moderately limited in her ability to understand, remember and carry out detailed instructions (R. at 111, 448).

The ALJ also limited plaintiff to no interaction with the general public (R. at 18). This limitation is consistent with the opinion of Dr. Maxfield, who opined that plaintiff was moderately limited in her ability to interact with the general public, and stated that interactions with the public should be limited (R. at 111-112). However, Dr. Holmes had opined that plaintiff was not significantly limited in this category (R. at 449).

Finally, the ALJ limited plaintiff to no more than occasional interaction with coworkers and supervisors (R. at 18). This limitation is consistent with the opinion of Dr. Holmes, who had opined that plaintiff was moderately limited in her ability to work in coordination with or proximity to others without being distracted by them, was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, and was moderately limited in her ability to get along with coworkers or peers without distracting

7

them or exhibiting behavioral extremes (R. at 448-449). However, Dr. Maxfield had found that plaintiff was not significantly limited in these same 3 categories (R. at 111-112).

The first issue the court will address is whether the ALJ erred in not including in her RFC findings a moderate limitation in the ability to maintain attention and concentration for extended periods.  This limitation was contained in the report from Dr. Maxfield, to whom the ALJ accorded substantial weight, and this limitation was also contained in the report from Dr. Holmes, to whom the ALJ accorded some weight.  Dr. Maxfield further indicated in his narrative discussion that plaintiff does have episodes of anxiety which "would impact her capacity for sustained concentration" (R. at 111).[2]

Thus, in his narrative, Dr. Maxfield expressly indicated that plaintiff's episodes of anxiety would impact her capacity for sustained concentration, although "severe" anxiety is under fairly good control and would not interfere with her capacity to sustain employment (R. at 111).[3]  In other words, although Dr. Maxfield opined that this limitation would not prevent her from working, it nonetheless would impact her capacity for sustained

---

[2] Defendant's brief states that Dr. Maxfield noted that plaintiff experiences episodes of anxiety which "might" impact her capacity for sustained concentration (Doc. 16 at 6).  In fact, Dr. Maxfield's report states that "claimant does have episodes of anxiety which <u>would</u> impact her capacity for sustained concentration (R. at 111, emphasis added).

[3] The form filled out by Dr. Maxfield states that the actual RFC assessment should be recorded in the narrative discussion in the explanation text boxes (R. at 110).

concentration.  However, the ALJ in this case did not include in her RFC findings the Section III or narrative mental RFC assessment set forth by Dr. Maxfield.  It is the narrative written by the psychiatrist or psychologist in Section III that ALJ's are to use as the assessment of RFC.  Lee v. Colvin, 631 Fed. Appx. 538, 541 (10th Cir. Nov. 12, 2015); Smith v. Colvin, 821 F.3d 1264, 1268-1269 & n.1 (10th Cir. May 9, 2016)(the form instructed the consultant to assess the RFC in a narrative; the court found no error when the ALJ incorporated the consultant's narrative into the RFC findings).

In the case of Martinez v. Astrue, 422 Fed. Appx. 719, 724-725 (10th Cir. Apr. 26, 2011), the court held that the ALJ erred by failing to include all of the limitations found by Dr. LaGrand without explaining why he rejected some of the limitations, especially in light of the ALJ's conclusion that the medical source's opinion was entitled to "great weight." The ALJ simply ignored certain limitations contained in the medical report.  The court held that the ALJ may have had reasons for giving great weight to some of the limitations set forth by the medical source, while rejecting other limitations. However, before rejecting some of the limitations, the ALJ was required to discuss why he did not include those limitations. An ALJ must explain why he rejected some limitations contained in a RFC assessment from a medical source while appearing to

9

adopt other limitations contained in the assessment.  Haga v. Astrue, 482 F.3d 1205, 1207-1208 (10th Cir. 2007); Frantz v. Astrue, 509 F.3d 1299, 1302-1303 (10th Cir. 2007); Wilson v. Colvin, 541 Fed. Appx. 869, 872-874 (10th Cir. Oct. 16, 2013); Heppler v. Colvin, Case No. 12-1267-SAC (D. Kan. Aug. 28, 2013; Doc. 17 at 9-14).  The ALJ should have either included this limitation contained in the narrative discussion, or explained why he did not include this limitation.

The next issue for the court to address is whether the failure to include the narrative discussion in her RFC findings, without explanation, is harmless error.  In Lee and Smith, the consultant made Section I findings which included a finding that the claimant was moderately limited in their ability to maintain attention and concentration for extended periods (Lee, 631 Fed. Appx. at 542), or moderately limited in their ability to maintain concentration, persistence, and pace (Smith, 821 F.3d at 1268).  However, in both cases, the Section III, or narrative findings, limited plaintiff to simple tasks (Lee, 631 Fed. Appx. at 542), or limited plaintiff to work that was limited in complexity (Smith, 821 F.3d at 1268).  In both cases, the ALJ followed the Section III, or narrative findings, and limited plaintiff to simple work.  Smith, 821 F.3d at 1268-69; Lee, 631 Fed. Appx. at 542).  In both cases, the court found no error when the moderate limitation in concentration, or concentration

for extended periods (Section I findings), was not included in the RFC findings because the ALJ adopted the Section III or narrative discussion.  It is the narrative written by the psychiatrist or psychologist in Section III that ALJ's are to use as the assessment of RFC.  Lee, 631 Fed. Appx. at 541.  As the court indicated in Lee, the Section III narrative, which the ALJ incorporated in his RFC assessment, reflected, explained, accounted for, and delimited each of the moderate limitations expressed in Section I.  Lee, 631 Fed. Appx. at 541-542.

In the case before the court, the ALJ, unlike in Smith and Lee, did not include in her RFC findings the consultant's narrative discussion that claimant has episodes of anxiety which would impact her capacity for sustained concentration; however, severe anxiety is now under fairly good control and would not interfere with her capacity to sustain employment.  In the case of Nelson v. Colvin, Case No. 15-6226 (10th Cir. July 12, 2016), the consultant in Section I found some moderate and marked limitations, including a moderate limitation in the ability to maintain attention and concentration for extended periods.  Then, in Section III, the consultant limited plaintiff to carrying out simple work, and further determined that plaintiff can interact with supervisors and coworkers on a superficial basis, but not with the general public.  The ALJ did not include the moderate limitation in attention and concentration for

extended periods in the RFC findings.  The court first found no error because the ALJ incorporated the Section III assessment in the RFC, and further determined that the Section III narrative adequately captured the limitations found in Section I.

However, the court further stated that plaintiff was limited to unskilled work, and the definition of unskilled work, as set out in SSR 96-9p, does not require the ability to maintain attention and concentration for extended periods.  For this reason, the court concluded that by limiting plaintiff to unskilled work, the ALJ effectively accounted for all of the limitations noted in Section I, including the moderate limitation in the ability to maintain attention and concentration for extended periods (slip opinion at 3-5).

In the case before the court, plaintiff was found to be able to perform three unskilled positions (R. at 22, 68). Therefore, even though the ALJ did not include the consultant's narrative statement in her RFC findings regarding her limitation in sustained concentration, it could be argued that the limitation to unskilled work is sufficient because unskilled work does not require the ability to maintain attention and concentration for extended periods.  Thus, the failure to include the limitation in sustained concentration appears to be harmless error.

Plaintiff also argues that the ALJ afforded the opinions of Dr. Holmes some weight, but did not provide reasons for that weight, and never explained what portions of the opinion he rejected or why (Doc. 11 at 16). The ALJ, in her RFC findings, set out three limitations, as noted above. The limitation to simple and routine tasks was consistent with the opinions of Dr. Maxfield and Dr. Holmes. The ALJ also limited plaintiff to no interaction with the general public, which was consistent only with the opinion of Dr. Maxfield (Dr. Holmes did not find plaintiff so limited). Finally, the ALJ limited plaintiff to no more than occasional interaction with coworkers and supervisors, which was consistent with the opinion of Dr. Holmes (Dr. Maxfield did not find plaintiff limited in this area).[4] The ALJ indicated that he gave substantial weight to the opinions of Dr. Maxfield and some weight to the opinions of Dr. Holmes.

The ALJ, without explanation, included in her RFC findings some of the limitations contained in the report from Dr. Holmes, while rejecting others. The case law, as set forth above, is clear that the ALJ must explain why she rejected some limitations contained in a RFC assessment while appearing to adopt other limitations contained in the assessment. The ALJ's

---

[4] As previously noted, Dr. Holmes found that plaintiff had a moderate limitation in the ability to work in coordination with or proximity to others without being distracted by them, a moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors, and a moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (R. at 448-449). However, Dr. Maxfield found that plaintiff was not significantly limited in these three categories (R. at 111-112).

13

statement that she gave the opinion of Dr. Holmes "some" weight is merely conclusory; it fails to provide any explanation for accepting some of the limitations while rejecting others.

SSR 96-8p states that the ALJ must explain how any material inconsistencies in the evidence in the case record were considered and resolved, and discuss why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. Finally, when the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p; 1996 WL 374184 at *7.

In this case, the ALJ, without explanation, made RFC findings which agreed with both physicians on one limitation, agreed only with Dr. Maxfield on a second limitation, and which agreed only with Dr. Holmes on the third limitation. The court cannot speculate as to why the ALJ adopted some of the limitations of Dr. Holmes, while rejecting others.[5] The failure to either include the other limitations in the report of Dr. Holmes, or explain why the other limitations were not included, cannot be deemed harmless error because some of the limitations contained in the report of Dr. Holmes which the ALJ did not include in her RFC findings could impact plaintiff's ability to perform the mental activities required for unskilled work. This

---

[5] The ALJ appears to have incorporated into her RFC findings five of the moderate limitations included in Dr. Holmes' report [## 3,5,9,14 & 15], but did not include the other five limitations [##6,7,11,13 & 17] (R. at 448-449).

would include moderate limitations in: (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (2) the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (3) the ability to ask simple questions or request assistance, and (4) the ability to respond appropriately to changes in the work setting.  The latter limitation is clearly implicated in the fact that the ability to deal with changes in a routine work setting is one of the mental activities required for unskilled work.  SSR 96-9p, 1996 WL 374185 at *9.

   IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

   Dated this 19th day of July 2016, Topeka, Kansas.


                           s/Sam A. Crow
                           Sam A. Crow, U.S. District Senior Judge